FILED
CLERK

6/29/2023 8:47 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | . Criminal No.  23-cr-00238-JMA-SIL-2 |
| | . |
| Vs. | . 100 Federal Plaza |
| | . Central Islip, NY  11722 |
| SEAN WILLIAMS and | . |
| ARTHUR CORNWALL, | . DATE: June 9, 2023 |
| . . . . . . . . . . . . . . | . |

TRANSCRIPT OF ARRAIGNMENTS AND PLEAS
BEFORE HONORABLE STEVEN I. LOCKE
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:      UNITED STATES ATTORNEYS OFFICE
                        EASTERN DISTRICT OF NEW YORK
                        BY:  BRADLEY KING, ESQ.
                        610 Federal Plaza
                        Suite 506
                        Central Islip,  NY   11722


For the Defendants:      THE CHARRINGTON FIRM, PC
                        BY:  KAREN HILLARY CHARRINGTON, ESQ.
                        One Cross Island Plaza
                        Suite 212
                        Rosedale, NY  11422

Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.

---

**TRACY GRIBBEN TRANSCRIPTION, LLC**
**PO BOX 688**
**Middletown, NJ 07748**
**(732) 263-0044    Fax No. 732-865-7179**
**800 603-6212**
**www.tgribbentranscription.com**

```
 1                          I N D E X

 2

 3                                      PAGE

 4   DUAL REPRESENTATION              5

 5   ARRAIGNMENT                      12

 6   WAIVER OF INDICTMENT             15

 7   BAIL                             20

 8

 9   WITNESSES           COURT

10   SEAN WITNESS        24/33

11   ARTHUR CORNWALL        39

12                                      PAGE

13   PLEA AGREEMENT TERMS             30

14   ELEMENTS OF CRIME                32

15   GOVERNMENT PROOFS/WILLIAMS       37

16   GOVERNMENT PROOFS/CORNWALL       49

17

18   PLEA RECOMMENDATION WILLIAMS     38

19   PLEA RECOMMENDATION CORNWALL     50

20

21

22

23

24

25
```

1          THE CLERK:  Calling case 23-cr-238, United States of

2   America versus Arthur Cornwall and Sean Williams.  Counsel,

3   please state your appearance for the record.

4          MR. KING:  Good afternoon, Your Honor, Bradley King,

5   on behalf of the United States. Joined today by United States

6   Postal Inspector Hope Serta (phonetic).

7          THE DEFENDANT:  Good afternoon.

8          MS. CHARRINGTON:  Good afternoon, Your Honor, Karen

9   Charrington, One Cross Island Plaza, Rosedale, New York, for

10  co-defendants.

11         THE COURT:  Good afternoon, please be seated.  Ms.

12  Charrington, your clients are with you at counsel table?

13         MS. CHARRINGTON:  Yes, they are, Your Honor.

14         THE COURT:  Before we get started, Mr. Cornwall, Mr.

15  Williams, I want to talk to you a little bit about the fact

16  that you've retained one lawyer to represent the both of you,

17  before we get into these proceedings, because that invites

18  potential conflicts.  And I want to ask you a few questions

19  about that.

20         But before I do, Mr. Williams -- well, which one of

21  you is Mr. Williams?

22         DEFENDANT WILLIAMS: I am, Your Honor.

23         THE COURT:  All right, please pull the microphone

24  toward you, everything is being recorded.  And there's more

25  than one microphone, they should all work.  Mr. Williams, how

1  old are you?

2           DEFENDANT WILLIAMS:  41.

3           THE COURT:  And how far did you go in school?

4           DEFENDANT WILLIAMS:  Three years college, Your Honor.

5           THE COURT:  Okay. And have you taken any drugs,

6  medicine, or pills, or drank any alcoholic beverages in the

7  past 24 hours?

8           DEFENDANT WILLIAMS:  No, Your Honor.

9           THE COURT:  You understand what's going on here

10 today?

11          DEFENDANT WILLIAMS:  Yes, Your Honor.

12          THE COURT:  Ms. Charrington, do you believe your

13 client is competent to proceed?

14          MS. CHARRINGTON:  Yes, I do, Your Honor.

15          THE COURT:  Is he competent to waive any potential

16 conflicts that might exist by your dual representation?

17          MS. CHARRINGTON:  He is competent.

18          THE COURT:  Okay. And Mr. Cornwall.

19          DEFENDANT CORNWALL:  Yes, Your Honor.

20          THE COURT:  Pull the mic a little closer to you.

21 Okay. Same questions for you.  How old are you, sir?

22          DEFENDANT CORNWALL:  I'm 42.

23          THE COURT:  And how far did you go in school?

24          DEFENDANT CORNWALL:  Two years in college.

25          THE COURT:  Okay, and have you taken any drugs, or

1  medicine, or pills, or drank any alcoholic beverages in the

2  past 24 hours?

3        DEFENDANT CORNWALL:  No, Your Honor.

4        THE COURT:  You understand the nature of today's

5  proceedings?

6        DEFENDANT CORNWALL:  Yes, Your Honor.

7        THE COURT:  Ms. Charrington, do you believe Mr.

8  Cornwall is competent to proceed and can understand the

9  potential conflicts that exist in a single dual -- that's not a

10 good way to put it.  In having you represent both defendants?

11       MS. CHARRINGTON:  Yes, he is competent to do so, Your

12 Honor.

13       THE COURT:  Okay.  All right.  I'm going to follow

14 with some more questions to each of you. You should each feel

15 -- I'm trying to make this an efficient proceeding, but if you

16 have any questions, or you don't understand anything I'm

17 saying, or maybe you can't even hear, the acoustics in here are

18 terrible.  I want you to speak up and let me know. And we'll

19 attempt to work through all these concepts until you're

20 comfortable that you understand how everything is working.

21 Okay?

22       DEFENDANT CORNWALL:  Yes, Your Honor.

23       THE COURT:  Okay.  The United States Constitution

24 gives every defendant the right to the effective assistance of

25 counsel.  When one lawyer represents two defendants, two or

more defendants in the case, the lawyer may trouble
representing all of the defendants with the same level of
fairness.  The conflict -- this result in a conflict of
interest. I don't know that one is occurring here, but it could
result in one, that might deny one or both of you the right to
the effective assistance of counsel.

The conflict is always a potential problem because
you can imagine, and I don't know the scenario here, but with
respect to certain crimes, different defendants may have
different levels of involvement or different levels of
culpability.  And that can create a problem for one lawyer
trying to wear two hats.  Meaning represent each of those
defendants with varying levels of involvement or culpability.
Do you understand the problem that I'm trying to raise?

DEFENDANT CORNWALL:  Yes, Your Honor.

DEFENDANT WILLIAMS:  Yes, Your Honor.

THE COURT:  Okay.  Dual representation could inhibit
or prevent the counsel from conducting an independent
investigation in support of each defendants' case.  For example
the attorney/client privilege may prevent your lawyer from
communicating to either of you, or each you about information
gathered about the other one of you.  Do you understand what
I'm saying?

DEFENDANT CORNWALL:  Yes, Your Honor.

DEFENDANT WILLIAMS:  Yes, Your Honor.

1          THE COURT:  Okay.  In addition, the Government could

2  offer immunity to one of you, or recommend a lesser sentence to

3  one of you in exchange for cooperation against the other one of

4  you.  Do you understand what I'm saying?

5          DEFENDANT CORNWALL:  Yes, Your Honor.

6          DEFENDANT WILLIAMS:  Yes, Your Honor.

7          THE COURT:  Okay.  And if you receive that kind of

8  offer, your lawyer would have to advise you whether or not to

9  accept it.  But if your lawyer is advising both of you and

10 maybe only one of you gets the offer, you see there could be a

11 potential problem there.  Do you understand?

12         DEFENDANT CORNWALL:  Yes, Your Honor.

13         DEFENDANT WILLIAMS:  Yes, Your Honor.

14         THE COURT:  Okay.  The Government might also, when a

15 defendant who is not as involved as the other defendant plead

16 guilty to a lesser charge than the second defendant.  After

17 guilty plea however the Government may require that defendant

18 to testify, and the lawyer who represents more than one

19 defendant might make a recommendation to the first defendant

20 that he not plead guilty in order to protect the other

21 defendant.  Another potential problem that's lurking. Do you

22 see that?

23         DEFENDANT CORNWALL:  Yes, Your Honor.

24         DEFENDANT WILLIAMS:  Yes, Your Honor.

25         THE COURT:  Okay.  Or, I guess the flip side of that

1  might be that the lawyer might recommend that the first

2  defendant plead guilty and then cooperate, which could result

3  in harm to the defense of the other defendant. Do you

4  understand that possibility as well?

5          DEFENDANT CORNWALL:  Yes, Your Honor.

6          DEFENDANT WILLIAMS:  Yes, Your Honor.

7          THE COURT:  Okay.  At trial, dual representation

8  could affect how your lawyer exercises what are called

9  peremptory challenges, challenges to certain jurors

10 participating in the case during jury selection.  A potential

11 juror may be favorable to one of you but not to the other or

12 vice versa.  And so you're helping one defendant's case, but

13 perhaps hurting the other.  Do you understand that potential

14 conflict that lurks?

15         DEFENDANT CORNWALL:  Yes, Your Honor.

16         DEFENDANT WILLIAMS:  Yes, Your Honor.

17         THE COURT:  Okay.  It's also possible that -- oh you

18 may have heard this, as a defendant you don't have to take the

19 stand, right?  You can't be compelled to incriminate yourself.

20 But one of you may think it's an appropriate strategy to take

21 the stand while the other doesn't. And that could have an

22 impact on one or both cases. And the lawyer has to make a

23 recommendation in that regard to each of you.  So do you see

24 the potential conflict that lurks there as well?

25         DEFENDANT CORNWALL:  Yes, Your Honor.

1            DEFENDANT WILLIAMS:  Yes, Your Honor.

2            THE COURT:  Okay.  Frequently the best defense for

3  one defendant is to say, not me, he did it, right, I'm

4  pointing, you know, you blame each other in order to create

5  reasonable doubt in the jury's mind about who did what or did

6  anything at all.  In order to do that effectively, or more

7  effectively, you'd have your own lawyers guiding you in that

8  regard.  If one of you or both of you were to employ that

9  defense here, there's a potential conflict lurking for you with

10 one lawyer coaching one or both of you on that defense. Do you

11 understand that?

12           DEFENDANT CORNWALL:  Yes, Your Honor.

13           DEFENDANT WILLIAMS:  Yes, Your Honor.

14           THE COURT:  Okay.  And evidence that might help one

15 of you could hurt the other as well.  Right, you could imagine

16 a string of texts or incriminating documents that one might

17 produce that could harm the other. And then your lawyer has to

18 give advice to both of you with respect to that single piece of

19 evidence.  And so a potential conflict lurks there as well. Do

20 you understand?

21           DEFENDANT CORNWALL:  Yes, Your Honor.

22           DEFENDANT WILLIAMS:  Yes, Your Honor.

23           THE COURT:  And then of course there's the context of

24 sentencing, where dual representation might prohibit counsel

25 from representing one of you with regards to sentencing in a

1  way that might harm the other.  In other words, there would be

2  two sets of negotiations and they may not be -- they may be in

3  tension with each other.  Do you understand?

4          DEFENDANT CORNWALL:  Yes, Your Honor.

5          DEFENDANT WILLIAMS:  Yes, Your Honor.

6          THE COURT:  Okay.  All right, given everything I've

7  just explained, and I will tell you candidly, it's always my

8  recommend that each defendant have his or her own lawyer for a

9  defense proceedings.  If you want to think about it, we can

10 adjourn. I'll give you all the time in the world. Not only

11 that, I'll get you another lawyer to speak to if you want just

12 so that you can ask questions or bounce ideas off them.

13 Anything in that regard. So let's start with this, first to

14 you, I'll ask you both the same questions.

15          Mr. Williams, do you want to proceed with the same

16 lawyer now?  Do you want to take a break to think about it?

17 Would you like to talk to another lawyer?  We've got them in

18 the building, I'm happy to provide it, about all those

19 potential conflicts, or anything.

20          DEFENDANT WILLIAMS:  No, Your Honor, I'm going to

21 proceed.

22          THE COURT:  Okay. And Mr. Cornwall, what about you,

23 same offer.  And just because Mr. Williams, don't feel

24 pressured, if he wants to proceed he's comfortable. And you are

25 feeling any hesitation whatsoever, that is fine.  This is the

1  only thing I have on this afternoon. I can go in the back,

2  we'll find another lawyer.  And we'll continue whenever you're

3  ready.

4          DEFENDANT CORNWALL:  No, I'm comfortable, Your Honor.

5          THE COURT: All right, so you want to proceed. You're

6  both prepared to waive the potential conflict as it exists at

7  this point, is that fair to say, Mr. Williams?

8          DEFENDANT WILLIAMS:  Yes, Your Honor.

9          THE COURT:  Mr. Cornwall?

10          DEFENDANT CORNWALL:  Yes, Your Honor.

11          THE COURT:  Okay, if as these proceedings go along,

12  and today is going to sort of an uber proceeding, with various

13  components, I perceive some kind of conflict, I'm going to

14  highlight it for you.  And if I perceive it's dramatic enough,

15  we're going to just make adjustments on the fly.  Because it's

16  always a concern to the Court that you have effective

17  assistance of counsel.  Of course allowing for the fact that

18  you also have the right to choose your own lawyer.  I'm not

19  trying to get in the middle of that.  I just want to make sure

20  that your rights are protected to the maximum extent possible.

21  Do you understand?

22          DEFENDANT CORNWALL:  Yes, Your Honor.

23          DEFENDANT WILLIAMS:  Yes, Your Honor.

24          THE COURT:  Okay.  Typically we go through these

25  things one defendant at a time.  And with respect to the plea

1    that we're going to get to, we will do that. But again I'm

2    going to try and run this as efficiently as possible.

3          Okay, with respect to what we call initial appearance

4    or an arraignment, the purpose of this proceeding is to make

5    sure that you understand the nature of the crimes you're

6    charged with to make sure you understand that you have the

7    right to be represented by an attorney, and we've already

8    talked about that a bit.  And to address the question of

9    whether you should be released on bail or held in jail.

10          You're not required to make a statement. If you've

11   started to make a statement you can stop at any time. If you've

12   made a statement you need not make any further statement.  Any

13   statement you do make however, other than to your attorney, can

14   be used against you.  Mr. Williams, do you understand?

15          DEFENDANT WILLIAMS:  Yes, Your Honor.

16          THE COURT:  Mr. Cornwall, do you understand?

17          DEFENDANT CORNWALL:  Yes, Your Honor.

18          THE COURT:  Okay.  Now you've both retained Ms.

19   Charrington to represent you, is that correct, Mr. Williams?

20          DEFENDANT WILLIAMS:  Yes, Your Honor.

21          THE COURT:  Mr. Cornwall?

22          DEFENDANT CORNWALL:  Yes, Your Honor.

23          THE COURT:  Okay.  Do you understand that you have

24   the right to retain any counsel that you choose on your own,

25   absent a conflict of interest, and if were to arise, you could

1  still retain anther attorney. Do you understand Mr. Williams?

2          DEFENDANT WILLIAMS:  Yes, Your Honor.

3          THE COURT:  Mr. Cornwall?

4          DEFENDANT CORNWALL:  Yes, Your Honor.

5          THE COURT:  Okay.  Okay, the two of you are here

6  today because you've both been charged in a single information

7  with conspiracy to commit wire fraud.  Mr. Williams have you

8  seen a copy of the information?

9          DEFENDANT WILLIAMS:  Yes, Your Honor.

10         THE COURT:  Okay, and have you had a chance to review

11 it with your attorney?

12         DEFENDANT WILLIAMS:  Yes, Your Honor.

13         THE COURT:  And was she able to explain the nature of

14 the charges to you?

15         DEFENDANT WILLIAMS:  Yes, Your Honor.

16         THE COURT:  And was she able to answer any questions

17 you had?

18         DEFENDANT WILLIAMS:  Yes, Your Honor.

19         THE COURT:  You're comfortable that you understand

20 the nature of the charges?

21         DEFENDANT WILLIAMS: Yes, Your Honor.

22         THE COURT:  Okay.  Mr. Cornwall, same questions to

23 you. Have you had a chance to review the information?

24         DEFENDANT CORNWALL:  Yes, Your Honor.

25         THE COURT:  Okay, have you had a chance to review the

1  information with your lawyer?

2             DEFENDANT CORNWALL:  Yes, Your Honor.

3             THE COURT:  And was she able to explain the nature of

4  the charges?

5             DEFENDANT CORNWALL:  Yes, Your Honor.

6             THE COURT:  And was she able to answer any questions

7  you had?

8             DEFENDANT CORNWALL:  Yes, Your Honor.

9             THE COURT:  Are you comfortable that you understand

10 the nature of the charges?

11            DEFENDANT CORNWALL:  Yes, Your Honor.

12            THE COURT:  Okay. You understand, Mr. Williams,

13 you've been charged with conspiracy to commit wire fraud?

14            DEFENDANT WILLIAMS:  Yes, Your Honor.

15            THE COURT:  And Mr. Cornwall, same question, you

16 understand you've been charged with conspiracy to commit wire

17 fraud?

18            DEFENDANT CORNWALL:  Yes, Your Honor.

19            THE COURT:  Okay.  Ms. Charrington, do you want a

20 public reading of the information?

21            MS. CHARRINGTON:  No, Your Honor.

22            THE COURT:  Okay.  For both defendants?

23            MS. CHARRINGTON:  For both.

24            THE COURT:  Okay.  Mr. Williams, do you understand

25 that maximum penalty you face with respect to the charge in the

1    information?

2              DEFENDANT WILLIAMS:  Yes, Your Honor.

3              THE COURT:  Mr. Cornwall, how about you, do you

4    understand the maximum penalty that you are exposed to with

5    respect to the charge in the information?

6              DEFENDANT CORNWALL:  Yes, Your Honor.

7              THE COURT:  Okay.  To both of you, you both have the

8    constitutional right to be charged by an indictment issued by a

9    Grand Jury.  Here the United States Attorney's Office has filed

10   something called an information which is a notice of the

11   charges against you.  Because you're charged with a felony

12   offense, you can only be charged by information if you waive

13   your constitutional right to an indictment.  An indictment is

14   when a Grand Jury hears evidence about the alleged offense and

15   returns an indictment finding probable cause that you committed

16   the alleged crimes.

17             A Grand Jury consists of 23 persons, 16 must be

18   present to hear a case. And 12, at least 12 must find probable

19   cause in order for you to be indicted.  A Grand Jury may or may

20   not indict you.  But if you waive indictment by a Grand Jury

21   the case proceeds against you on the US Attorney's information

22   just as though you've been indicted.

23             Mr. Williams, have you discussed your right to an

24   indictment by Grand Jury with your attorney?

25             DEFENDANT WILLIAMS:  Yes, Your Honor.

1          THE COURT:  And do you understand your right to

2  indictment by a Grand Jury?

3          DEFENDANT WILLIAMS:  Yes, Your Honor.

4          THE COURT:  Okay, do you now want to waive that right

5  and proceed by the US Attorney's information?

6          DEFENDANT WILLIAMS:  Yes, Your Honor.

7          THE COURT:  Has anyone made any threats or promises

8  in order to get you to coerce you into agreeing to waive

9  indictment?

10         DEFENDANT WILLIAMS:  No, Your Honor.

11         THE COURT:  Okay.  Mr. Cornwall, same questions. Have

12  you discussed your right to indictment by Grand Jury with your

13  attorney?

14         DEFENDANT CORNWALL:  Yes, Your Honor.

15         THE COURT:  Do you believe you understand your right

16  to indictment?

17         DEFENDANT CORNWALL:  Yes, Your Honor.

18         THE COURT:  Okay, and do you now wish to waive your

19  right to indictment and proceed by the US Attorney's

20  information?

21         DEFENDANT CORNWALL:  Yes, Your Honor.

22         THE COURT:  Okay, has anyone made any threats or

23  promises to you in order to coerce you or induce you to get you

24  to waive indictment

25         DEFENDANT CORNWALL:  No, Your Honor.

1          THE COURT:  Okay.  Ms. Charrington, have you reviewed

2  the information with both of your clients?

3          MS. CHARRINGTON:  Yes, Your Honor.

4          THE COURT:  Do you believe they both understand the

5  nature of the charges?

6          MS. CHARRINGTON:  I do.

7          THE COURT:  And if I ask you any questions that yes

8  to one defendant and no to the other, you'll highlight that,

9  correct?

10          MS. CHARRINGTON:  I will.

11          THE COURT:  Okay.  All right. Given the colloquy

12  between us, I find that the waiver of indictment has been

13  knowingly and voluntarily made by each of the two defendants.

14  And I'm accepting both of the waivers. And I want the record to

15  reflect that indictment has been waived.

16          I'll just add, I'm holding two documents, first with

17  respect to you, Mr. Williams, I'm holding a one page document

18  entitled waiver of indictment.  It appears to bear your

19  signature on the bottom. Did you sign this?

20          DEFENDANT WILLIAMS:  Yes, Your Honor.

21          THE COURT:  Okay, and this indicates your desire to

22  waive indictment, is that correct?

23          DEFENDANT WILLIAMS:  That's correct, Your Honor.

24          THE COURT:  And Mr. Cornwall, same question to you.

25  I'm holding a one page document entitled waiver of indictment.

1    And it appears to bear your signature on the bottom.  Did you

2    sign this?

3              DEFENDANT CORNWALL:  Yes, Your Honor.

4              THE COURT:  Okay. And does this document reflect your

5    intention to waive indictment and proceed by the US Attorney's

6    information?

7              DEFENDANT CORNWALL:  Yes, Your Honor.

8              THE COURT:  Okay, going to countersign them both now.

9    Okay.  We're still in the arrangement portion of this.  So I'm

10   going to ask you first, Mr. Williams, how do you plead to the

11   one count in the US Attorney's information, conspiracy to

12   commit wire fraud?

13             MS. CHARRINGTON:  Your Honor, I'm just explaining.

14             THE COURT:  No, you can take a moment, but turn off

15   the mics if you want to talk to your clients.

16             MS. CHARRINGTON:  Okay.

17             THE COURT:  Because otherwise it will carry.

18                    (Counsel and defendants confer)

19             THE COURT:  We're back on?

20             MS. CHARRINGTON:  That's fine. I just explained that

21   while we are taking a plea in the arraignment portion.

22             THE COURT:  And a lot of people miss that.  But okay.

23   So with respect just to the arraignment portion of these

24   proceedings, Mr. Williams, how do you plead to the one count in

25   the information for conspiracy to commit wire fraud?

1          DEFENDANT WILLIAMS:  Not guilty, Your Honor.

2          THE COURT:  All right, same question to you, Mr.

3    Cornwall, for the purposes of the arraignment, how do you plead

4    to one count to the US Attorney's information for conspiracy to

5    commit wire fraud?

6          DEFENDANT CORNWALL:  Not guilty, Your Honor.

7          THE COURT:  Okay.  Before we continue, I direct the

8    prosecution to comply with its obligation under Brady versus

9    Maryland, and this by the way is with respect to both

10   defendants, Brady versus Maryland and its progeny, to disclose

11   all information, whether admissible or not, that is favorable

12   to the defendants, material either to guilt or to punishment,

13   and by that I mean either or both defendants, and known to the

14   prosecution.  Possible consequences for non compliance may

15   include dismissal of the individual charges or the entire case,

16   exclusion of evidence, and professional discipline or court

17   sanctions on the attorneys responsible.  I'll be entering a

18   written order more fully describing this obligation and the

19   possible consequences of failing to meet it.  And I direct the

20   prosecution to review and comply with that order.

21          Mr. King, do you confirm that the Government

22   understands its obligations in this regard and will fulfill

23   them?

24          MR. KING:  Yes, as to both defendants, Your Honor,

25   the Government understands the obligations and will fulfill

1  them.

2        THE COURT:  Okay.  Last question with respect to

3  bail.  I've been handed before we came out here, a bond for

4  each of the defendants.  Okay, these are unsecured bonds in the

5  amount of $250,000 and they're, there's no surety for either of

6  those, is that correct?

7        MR. KING:  That's correct, Your Honor.

8        THE COURT:  Okay.  To both of you, Mr. Williams and

9  Mr. Cornwall, a bond is something that's issued so that you may

10  be released pending the outcome of these proceedings. But in

11  order to be released, your conduct is going to be restricted in

12  a variety of ways. One of which is, you're going to be subject

13  to pretrial supervision.  Right, which is sort of an arm of the

14  court that will monitor your conduct going forward, and ensure

15  your compliance.

16        But another one which exists here is a restriction on

17  travel.  According to these bonds you can travel New York City,

18  Long Island, New York State, New Jersey, and Pennsylvania.

19  Otherwise you need approval of Pretrial Services to go anywhere

20  else.  So if you were to go through Pennsylvania, and think gee

21  whiz, this is nice, I'm going to go all the way to Ohio,

22  because I've never seen it, that's a violation.  And you can be

23  subject to a $250,000 forfeiture as a result of that violation.

24  In other words, the restrictions have teeth.  And what I want

25  to hear from each of you -- and the bonds are identical, is

1  that correct?

2              MR. KING:   Same bond, same conditions,  Your Honor.

3              THE COURT:   What I want to hear from each of you, and

4  I'll start with Mr. Williams again, is are you going to comply

5  with these restrictions?

6              DEFENDANT WILLIAMS:  Yes, Your Honor.

7              THE COURT:   Okay, and let me add, have you had a

8  chance to review them with your attorney so that she can answer

9  any questions you had and explain them?

10             DEFENDANT WILLIAMS:  Yes, Your Honor.

11             THE COURT:   Okay.  You're comfortable you understand

12 the restrictions?

13             DEFENDANT WILLIAMS:  Yes, Your Honor.

14             THE COURT:   Okay, same questions to you, Mr.

15 Cornwall.  Did you review the restrictions in your bond, in

16 your proposed bond with your attorney?

17             DEFENDANT CORNWALL:  Yes, Your Honor.

18             THE COURT:   And she was able to explain the

19 conditions to you?

20             DEFENDANT CORNWALL:  Yes, Your Honor.

21             THE COURT:   And you're comfortable with those

22 conditions?

23             DEFENDANT CORNWALL:  Yes, Your Honor.

24             THE COURT:   You're going to abide by them?

25             DEFENDANT CORNWALL:  Yes, Your Honor.

1      THE COURT:  All right, I'm going to sign the bonds

2   now.  Okay, before we get to the pleas, is there anything else

3   from the Government?

4      MR. KING:  There's none, Your Honor.

5      THE COURT:  For the defense, for either defendant?

6      MS. CHARRINGTON:  Nothing, Your Honor.

7      THE COURT:  All right.  So we're prepared to proceed

8   to the pleas.  We're just going to circulate a form which I'll

9   explain in a moment, but essentially it's the consent for the

10  Magistrate Judge to preside. So take a moment to explain it to

11  your clients and then we'll continue.

12            (Counsel and defendants confer)

13     THE COURT:  Okay, the record will reflect that the

14  defendants have signed the proposed bonds indicating their

15  understanding of the terms.  And we'll continue.

16     MR. KING:  (indiscernible-out of range of microphone)

17     THE COURT:  I'm sorry.  The consents, we're up to the

18  consents.  Apologies.  Okay.  To both of you, you have a right

19  to have your plea heard by a United States District Judge.  In

20  this case the District Judge assigned to this case is Judge

21  Azrack. I am not a United States District Judge.  I'm a United

22  States Magistrate Judge.  Therefore in order for me to preside

23  over these proceedings I need you consent.  Mr. Williams, do

24  you consent to me presiding over these proceedings?

25     DEFENDANT WILLIAMS:  Yes, Your Honor.

1             THE COURT:  Okay, you both --

2             DEFENDANT CORNWALL:  Yes, Your Honor.

3             THE COURT:  I heard you, you both have atrocious

4    handwriting.  I can't tell who signed which.  But I'm holding

5    two signed orders of referral indicating consent.  Mr.

6    Williams, did you sign one of them?

7             DEFENDANT WILLIAMS:  Yes, Your Honor.

8             THE COURT:  Okay, same questions to you, Mr.

9    Cornwall.  You heard my conversation with your co-defendant?

10            DEFENDANT CORNWALL:  Yes, sir.

11            THE COURT:  You understand you have a right to have

12   your plea heard by a United States District Judge and that I am

13   not a United States District Judge?

14            DEFENDANT CORNWALL:  Yes, yes, Your Honor.

15            THE COURT:  I'm a United States Magistrate Judge,

16   therefore I need your consent to preside over these

17   proceedings. Do you consent?

18            DEFENDANT CORNWALL:  Yes, Your Honor.

19            THE COURT:  And you've signed a writing to these

20   effect, is that correct?

21            DEFENDANT CORNWALL: Yes, Your Honor.

22            THE COURT:  Okay.  I'm going to countersign those

23   now.  Okay.  Now we're just going to go one at a time from here

24   on out. We'll start with you Mr. Williams.  And Mr. Cornwall,

25   you can take a moment.

1           The way this is going to work Mr. Williams, is that I
2  will take your plea and then I'll make a recommendation to
3  Judge Azrack as to whether she should accept it.  In order to
4  do that I have to ask you questions about you and about what
5  you did in order to satisfy myself that your plea is indeed a
6  valid one.  Accordingly if you don't understand any of my
7  questions, or you don't hear any of my questions, please say so
8  and I'll attempt to rephrase it such that you can understand
9  it.  Or repeat it such that you can hear it.  Do you
10 understand?
11          DEFENDANT WILLIAMS:  Yes, Your Honor.
12          THE COURT:  All right.  Would you please stand and
13 raise your right hand.
14              DEFENDANT, SEAN WILLIAMS, SWORN
15          THE COURT:  Please be seated.
16 EXAMINATION BY THE COURT:
17 Q    Sir, do you understand that having been sworn, your
18 answers to my questions will be subject to the penalties of
19 perjury or of making a false statement if you do not answer
20 truthfully?
21 A    Yes, Your Honor.
22 Q    What is your full name?
23 A    Sean Charles Williams.
24 Q    And how old are you?
25 A    41.

1   Q     Are you a citizen of the United States?

2   A     Yes, Your Honor.

3   Q     And how far did you go in school?

4   A     Three years of college.

5   Q     And where was that?

6   A     Brooklyn College.

7   Q     Brooklyn College.  And what were you studying?

8   A     Film and screen writing.

9   Q     Film and screen writing?

10  A     Yes, Your Honor.

11  Q     Are you presently or have you recently been under the care

12  of a physician or psychiatrist?

13  A     Yes, Your Honor.

14  Q     And for what?

15  A     For alcoholism, Your Honor.

16  Q     Okay.  Are you -- well is there anything about your

17  condition that would impact your ability to understand the

18  nature of today's proceedings?

19  A     No, Your Honor.

20  Q     Are you taking any medication in relation to your

21  condition?

22  A     No, Your Honor.

23  Q     Are you taking any other medication at all?

24  A     No, Your Honor.

25  Q     Okay.  Have you ever been hospitalized or treated for

1  narcotic addiction?

2  A     No, Your Honor.

3  Q     Is your mind clear today?

4  A     Yes, Your Honor.

5  Q     Do you understand what's going on?

6  A     Yes, Your Honor.

7           THE COURT:  Mr. Charrington, have you discussed this

8  matter with your client?

9           MS. CHARRINGTON:  Yes, I have.

10          THE COURT:  Do you believe he understands the rights

11 he'd be waiving with a guilty plea?

12          MS. CHARRINGTON:  Yes, he does.

13          THE COURT:  Is he capable of understanding the nature

14 of today's proceedings?

15          MS. CHARRINGTON:  He is capable.

16          THE COURT:  Do you have any doubt about his

17 competence at this time?

18          MS. CHARRINGTON:  No doubt.

19          THE COURT:  All right.

20 BY THE COURT:

21 Q     Mr. Williams, you have the right to plead not guilty. Do

22 you understand?

23 A     Yes, Your Honor.

24 Q     If you plead not guilty under the Constitution and Laws of

25 the United States, you're entitled to a speedy and public trial

1  by jury with the assistance of counsel on all charges.  Do you

2  understand?

3  A    Yes, Your Honor.

4  Q    At trial you'd be presumed to be innocent, and the

5  Government would have to overcome that presumption and prove

6  you guilty by competent evidence and beyond a reasonable doubt.

7  And you would not have to prove that you're innocent.  And if

8  the Government failed the jury would have the duty to find you

9  not guilty.  Do you understand?

10  A    Yes, Your Honor.

11  Q    In the course of the trial, the witnesses for the

12  Government would have to come forward and testify in your

13  presence and your counsel would have the right to cross examine

14  the witnesses for the Government, to offer objection, to object

15  to evidence offered by the Government, and offer evidence on

16  your behalf. Do you understand?

17  A    Yes, Your Honor.

18  Q    And if there were witnesses that were reluctant to come to

19  trial, your attorney would have the right to subpoena those

20  witnesses and make them testify on your behalf. Do you

21  understand

22  A    Yes, Your Honor.

23  Q    At trial while you'd have the right to testify if you

24  choose to do so, you could not be required to testify. Under

25  the Constitution of the United States you cannot be compelled

1  to incriminate yourself. If you decided not to testify, the

2  Court would instruct the jury that they could not hold that

3  against you.  Do you understand?

4  A    Yes, Your Honor.

5  Q    If you plead guilty, and I recommend acceptance of that

6  plea, and the plea is accepted, you'll be giving up your

7  constitutional rights to a trial and the other rights we've

8  just discussed.  There will be no further trial of any kind and

9  no right to appeal or collaterally challenge or attack the

10 question -- or attack your guilt.  In other words you won't be

11 able to challenge your sentence of conviction unless you're

12 sentenced to a period of incarceration greater than 46 months.

13 Do you understand?

14 A    Yes, Your Honor.

15 Q    If you plead guilty I'm going to have to ask you questions

16 about what you did in order to satisfy myself that you are

17 guilty of the charge to which you seek to plead guilty.  And

18 you'll have to answer my questions and acknowledge your guilt.

19 Thus you'll be giving up your right not to incriminate

20 yourself.  Do you understand?

21 A    Yes, Your Honor.

22 Q    Are you willing to give up your rights to a trial and the

23 other rights we've just discussed?

24 A    Yes, Your Honor.

25 Q    I'm holding a document entitled plea agreement.  It's six

1  pages and appears to bear your signature on the last page.  Did

2  you sign this?

3  A    Yes, Your Honor.

4  Q    Did you review it with your attorney before you signed it?

5  A    Yes, Your Honor.

6  Q    And was she able to explain it to you?

7  A    Yes, Your Honor.

8  Q    And did she answer whatever questions you may have had?

9  A    Yes, Your Honor.

10 Q    Are you satisfied that you understand the agreement's

11 terms?

12 A    Yes, Your Honor.

13       THE COURT:  All right, I'm going to ask the attorney

14 for the Government, Mr. King, to summarize the material terms

15 of the agreement on the record.  And you can include the

16 penalties.

17       MR. KING:  Yes, Your Honor. In the interest of

18 efficiency, because the agreements are identical, would it be

19 okay if I did this as to both defendants?  Or do you want me to

20 repeat it after you do the colloquy with Mr. Cornwall?

21       THE COURT:  Okay, let's try this.  Mr. Cornwall,

22 because the agreements are identical, the penalties that are

23 being summarized for Mr. Williams, your co-defendant, are the

24 same penalties that you face. I'm going to ask you to listen

25 actively, because I'm going to ask you questions about it when

1   we come to your portion of the plea agreement. And candidly, if

2   when we get to questions to you about this, if you don't

3   remember or you have questions about this part, say so at that

4   time and Mr. King will go through it again.  So don't be

5   concerned like this is a test.  It's not.  Or a test of

6   memorization at least, okay?

7              DEFENDANT CORNWALL:  Okay, Your Honor.

8              THE COURT:  All right.  Mr. King.

9              MR. KING:  Okay, Your Honor, as to both defendants in

10  this case, they will be pleading guilty to the sole count in

11  the information, which is conspiracy to commit wire fraud.

12             The applicable statutory penalties are as follows.  A

13  maximum term of imprisonment of 30 years.  A minimum term of

14  imprisonment of zero years.  A maximum supervised release term

15  of five years, which will follow any term of imprisonment.  If

16  a condition of supervised release is violated, the defendants

17  could be sentenced to up to three years imprisonment without

18  credit for prerelease imprisonment or time previously served on

19  post release supervision.

20             There's  maximum fine here that is the greater of

21  $250,000 or twice the gross gain or twice the gross loss from

22  the offense.  Restitution is mandatory in the full amount of

23  each victims' losses as determined by the Court. And there is a

24  $100 special assessment.

25             Your Honor, would you like me to go into the

1 sentencing guidelines provisions that are in the plea

2 agreement?

3          THE COURT:  Yes, I'd like you to outline them, don't

4 have to go through it line by line.

5          MR. KING:  Okay, and as I outline them I'll not too

6 that they are the exact same sentencing guidelines provisions

7 for both defendants.  There's an adjusted offense level under

8 the sentencing guidelines of 23, which is reduced further down

9 to 20 based upon acceptance of responsibility and the

10 defendants entering their pleas prior to June 16th of 2023.

11          The result is that because both defendants are a

12 criminal history category 1, there is an adjusted offense level

13 of 20. That carries a sentencing range of imprisonment of 33 to

14 41 months.  And the defendants both have stipulated to that

15 guidelines calculation.

16          As Your Honor alluded to earlier, the defendants have

17 agreed to not file an appeal or otherwise challenge by petition

18 pursuant to 28 USC 2255 or any other provision, their

19 conviction or sentence in this case in the event that Judge

20 Azrack imposes a term of imprisonment at or below 46 months.

21          That Your Honor, is a summary of the salient portions

22 of the agreement that go towards the penalties that are

23 applicable in, and the sentencing guidelines range applicable

24 in this case.

25          THE COURT:  Mr. Charrington, anything to add to that?

1          MS. CHARRINGTON:  Nothing to add.

2   BY THE COURT:

3   Q    We talk about the elements of a crime, Mr. Williams, which

4   are the elements that the Government must prove to establish

5   guilt at trial.  Are you aware of the elements of the crime

6   with which you are charged and which you intend to plead

7   guilty?

8   A    Yes, Your Honor.

9          THE COURT:  Okay, I'm going to ask the attorney for

10  the Government to outline those elements and I'm going to ask

11  you Mr. Cornwall also to be actively engaged, because these

12  questions will all circle back to you in a few minutes.  Mr.

13  King.

14         MR. KING:  Yes, Your Honor.  With respect to both

15  defendants now the sole count in the information, conspiracy to

16  commit wire fraud, has the following elements.  An agreement

17  whether by word or in deed to execute a scheme or artifice to

18  defraud another person or institution. In this case the small

19  business administration and a financial institution which is

20  known to the Government, which administered the paycheck

21  protection and idol programs, which were COVID-19 relief

22  programs.

23         The purpose of the scheme and agreement needs to be

24  to obtain money and property.  And there needs to be one or

25  more materially false or fraudulent pretenses or

1   representations that are made in furtherance of the scheme. And

2   that are -- and a transmission in furtherance of the scheme by

3   an interstate wire communication.

4           Also the Government would have to prove that one or

5   more acts in furtherance of the scheme or agreement to commit

6   the scheme occurred within the Eastern District of New York.

7           THE COURT:  Ms. Charrington, anything to add to that?

8           MS. CHARRINGTON:  Nothing to add.

9           THE COURT:  Okay.

10  BY THE COURT:

11  Q    Mr. Williams, have you discussed with your attorney the

12  charge in the information to which you intend to plead guilty?

13  A    Yes, Your Honor.

14  Q    And you understand the nature of that charge?

15  A    Yes, Your Honor.

16  Q    Okay, a few moments ago the Attorney for the Government

17  outlined the potential penalties you face, do you recall that?

18  A    Yes, Your Honor.

19  Q    Okay, as part of that outline he referred to something

20  called supervised release, which would be a term of time after

21  incarceration during which your conduct would be restricted in

22  a variety of ways, much like when you're out on a bond your

23  conduct is restricted in certain ways. These would be a

24  different set of restrictions.  The point I want to make to you

25  though, and make sure you understand is that if you were to

1  violate any of the terms of your supervised release, violate

2  those restrictions, you could be subject to another period of

3  incarceration of up to three years without credit for prior

4  time served, do you understand?

5  A    Yes, Your Honor.

6  Q    Have you discussed the sentencing guidelines and other

7  sentencing factors with your attorney?

8  A    Yes, Your Honor.

9  Q    Do you understand that the sentencing guidelines are not

10 mandatory, but that in sentencing the Court is required to

11 consider the applicable guideline range along with certain

12 statutory factors, and the Court will consider the nature and

13 circumstances of the offense, your criminal history if there is

14 any, and other characteristics?

15 A    Yes, Your Honor.

16 Q    What that means is the only guarantee you have with

17 respect to sentencing is the statutory maximum we discussed

18 before, which is 30 years.  Do you understand that?

19            MS. CHARRINGTON:  30 years?

20            THE COURT:  The statutory maximum is 30 years.

21            MS. CHARRINGTON:  Sorry.

22 A    Yes, Your Honor.

23 Q    Okay.  In -- do you want to talk to your lawyer about

24 that?  I just want to make sure you're sure.

25 A    No, Your Honor.

1  Q    Okay.  In formulating the sentencing as I mentioned a

2  moment ago, the District Court has to consider certain factors,

3  these include the seriousness of the offense, just punishment

4  and protection of the public from additional criminal conduct

5  by you and others.  Do you understand?

6  A    Yes, Your Honor.

7  Q    Do you realize if the sentence is more severe than you

8  expect you'll still be bound by your plea and you will not be

9  permitted to withdraw it, although as I mentioned earlier, you

10 may be able to attack the conviction or sentence if you're

11 sentenced to a period of incarceration greater than 46 months.

12 Do you understand?

13 A    Yes, Your Honor.

14 Q    Okay.  Do you have any questions you'd like to ask me

15 about the charges or your rights or anything else relating to

16 this matter?

17 A    No, Your Honor.

18 Q    Are you prepared to plea at this time?

19 A    Yes, Your Honor.

20       THE COURT:  Ms. Charrington, do you know any legal

21 reason why Mr. Williams should not plead guilty?

22       MS. CHARRINGTON:  No, Your Honor.

23 Q    All right, Mr. Williams, are you satisfied with your legal

24 representation up until this point?

25 A    Yes, Your Honor.

36

1  Q    You believe your lawyer did a good job?

2  A    Yes, Your Honor.

3  Q    What is your plea to the one count in the information for

4  conspiracy to commit wire fraud?

5  A    Guilty, Your Honor.

6  Q    Are you making this plea of guilty voluntarily and of your

7  own free will?

8  A    Yes, Your Honor.

9  Q    Has anyone threatened you or coerced you in any way in

10  order to get you to plead guilty?

11  A    No, Your Honor.

12  Q    Other than you agreement with the Government, the plea

13  agreement that you signed and we've reviewed on the record, has

14  anyone made any promises to you in order to get you to plead

15  guilty?

16  A    No, Your Honor.

17  Q    Has anyone made any promise to you as to what your

18  sentence will be?

19  A    No, Your Honor.

20  Q    All right, I'm now going to ask you to describe for me in

21  your own words what you did in connection with the charge that

22  you're pleading guilty to.  Go ahead.

23  A    Between approximately May 1st 2020 and July 31st 2020 in

24  Valley Stream, New York and other places, I agreed with other

25  individuals to engage in a scheme to defraud the small business

administration and financial institutions, the paycheck

protection program and economics injury disaster loan proceeds.

As part of the scheme I caused the submission of PPP and EIDL

loan applications over the internet that contained false

information about companies that I operated, including the

identity of the individual applying for the loans, the

companies, number of employees, revenue, payroll costs, and the

intended use of the loan proceeds.  Based upon this false

information, SBA distributed PPP and EIDL loan proceeds to bank

accounts that I control.

THE COURT:  Okay, are you done?

DEFENDANT WILLIAMS:  Yes, Your Honor.

THE COURT:  Okay. Anything else in that regard, Mr.

King?

MR. KING:  No, Your Honor, the allocution is

sufficient.

THE COURT:  Okay.  I'm going to ask the Government

now to outline the proof that would have been offered had this

matter gone to trial.

MR. KING:  Your Honor, had the matters gone to trial

we would have offered financial records that would show that

the proceeds that were obtained were not used appropriately.

That they were used in ways that were not approved by the SBA

or the financial institutions or in accordance with the

agreements that the defendants entered into.

1          We would have offered email correspondence that was

2     obtained by a search warrant that would have shown the intent

3     to engage in a scheme to defraud the SBA and financial

4     institutions.  We would have offered evidence from witnesses

5     and corporate records that would also establish the fraud.

6          THE COURT:  And establish the falsity of the

7     statements that were made to get the money.

8          MR. KING:  Yes, Your Honor.  Yes.

9          THE COURT:  Okay.  Ms. Charrington, anything else you

10    want to -- in this regard or anything else you want to put on

11    the record at all with respect to Mr. Williams?

12          MS. CHARRINGTON:  Not at this time.

13          THE COURT:  All right.  Based on the information

14    given to me I find that Mr. Williams is acting voluntarily.

15    That he fully understands his rights and the consequences of

16    his plea.  And that there's a factual basis for the plea.

17          I'm therefore recommending to Judge Azrack that she

18    accept the plea to the one count in the information for

19    conspiracy to commit wire fraud.

20          Okay, that's it for Mr. Williams.  Mr. Cornwall.

21          DEFENDANT CORNWALL:  Yes, Your Honor.

22          THE COURT:  You're up.  You heard what I said to Mr.

23    Williams before about if you don't understand any of my

24    questions, or you don't hear them, please let me know and I'll

25    attempt to rephrase it or repeat it such that you can

1  understand it, okay?

2              DEFENDANT CORNWALL:  Yes.

3              DEFENDANT, ARTHUR CORNWALL, SWORN

4              THE COURT:  Please be seated.

5  EXAMINATION BY THE COURT:

6  Q    Mr. Cornwall, do you understand that having been sworn,

7  your answers to my questions will be subject to the penalties

8  of perjury or of making a false statement if you do not answer

9  truthfully?

10 A    Yes, Your Honor.

11 Q    What is your full name?

12 A    Arthur Neal Cornwall, Jr.

13 Q    What's your middle name?

14 A    Neal.

15 Q    Oh, Neal.

16 A    Neal, yeah.

17 Q    I told you the acoustics in here are not great. How old

18 are you, sir?

19 A    I'm 42 years old, Your Honor.

20 Q    Are you a citizen of the United States?

21 A    Yes.

22 Q    And how far did you go in school?

23 A    Two years.

24 Q    Two years of?

25 A    College.

1  Q     College.  And where was that?

2  A     DeVry University.

3  Q     In Philadelphia?

4  A     No, in New York City.

5  Q     I know they have more than one location.

6  A     Yeah.

7  Q     Okay.  Are you presently or have you recently been under

8  the care of a physician or psychiatrist?

9  A     Psychiatrist.

10  Q     And how recent was that?

11  A     Last month.

12  Q     Okay, and what are you being treated for?

13  A     Anxiety.

14  Q     Is there anything about your anxiety that would interfere

15  with your ability to understand the nature of today's

16  proceedings?

17  A     No, Your Honor.

18  Q     Are you taking any medication in conjunction with your

19  anxiety?

20  A     No, Your Honor.

21  Q     Are you taking any other medication at all?

22  A     No, Your Honor.

23  Q     Okay.  Have you ever been hospitalized for narcotic

24  addiction?

25  A     No, Your Honor.

1   Q     Is your mind clear today?

2   A     Yes, Your Honor.

3   Q     Do you understand what's going on?

4   A     Yes, I do, Your Honor.

5           THE COURT:  Mr. Charrington, have you discussed this

6   matter with Mr. Cornwall?

7           MS. CHARRINGTON:  Yes, I have, Your Honor.

8           THE COURT:  Do you believe he understands the rights

9   he'd be waiving with a guilty plea?

10          MS. CHARRINGTON:  Yes, I does.

11          THE COURT:  Is your client capable of understanding

12  the nature of today's proceedings?

13          MS. CHARRINGTON:  Yes. He is capable.

14          THE COURT:  Do you have any doubt about his

15  competence at this time?

16          MS. CHARRINGTON:  No doubt, Your Honor.

17          THE COURT:  All right.

18  BY THE COURT:

19  Q     Mr. Cornwall, you have the right to plead not guilty. Do

20  you understand?

21  A     Yes, I do, Your Honor.

22  Q     If you plead not guilty under the Constitution and Laws of

23  the United States, you're entitled to a speedy and public trial

24  by jury with the assistance of counsel on all charges.  Do you

25  understand?

1   A     Yes, Your Honor.

2   Q     At trial you'd be presumed to be innocent, and the

3   Government would have to overcome that presumption and prove

4   you guilty by competent evidence and beyond a reasonable doubt.

5   And you would not have to prove that you're innocent.  And if

6   the Government failed the jury would have the duty to find you

7   not guilty.  Do you understand?

8   A     Yes, I do, Your Honor.

9   Q     In the course of the trial, the witnesses for the

10  Government would have to come forward and testify in your

11  presence and your counsel would have the right to cross examine

12  the witnesses for the Government, to object to evidence offered

13  by the Government, and offer evidence on your behalf. Do you

14  understand?

15  A     Yes, Your Honor.

16  Q     And if there were witnesses that were reluctant to come to

17  trial, your attorney would have the right to subpoena those

18  witnesses and make them testify on your behalf. Do you

19  understand

20  A     Yes, Your Honor.

21  Q     At the trial while you'd have the right to testify if you

22  choose to do so, you could not be required to testify. Under

23  the Constitution of the United States you cannot be compelled

24  to incriminate yourself. If you decided not to testify, the

25  Court would instruct the jury that they could not hold that

1  against you.  Do you understand?

2  A    Yes, Your Honor.

3  Q    If you plead guilty, and I recommend acceptance of the

4  plea, and the plea is accepted, you'll be giving up your

5  constitutional rights to a trial and the other rights we've

6  just discussed.  There will be no further trial of any kind and

7  no right to appeal or collaterally or attack at any time the

8  question of whether you are not.  Although you may be able to

9  challenge the conviction or sentence if you're sentenced to a

10  period of incarceration greater than 46 months.  Do you

11  understand?

12  A    Yes, Your Honor.

13  Q    If you plead guilty I'm going to have to ask you questions

14  about what you did in order to satisfy myself that you are

15  guilty of the charge to which you seek to plead guilty.  And

16  you'll have to answer my questions and acknowledge your guilt.

17  Thus you'll be giving up your right not to incriminate

18  yourself.  Do you understand?

19  A    Yes, Your Honor.

20  Q    Are you willing to give up your right to a trial and the

21  other rights we've just discussed?

22  A    Yes, Your Honor.

23  Q    I'm holding before me a document entitled plea agreement.

24  It's six pages and appears to bear your signature on the last

25  page.  Did you sign this?

1  A      Yes, Your Honor.

2  Q      Did you review it with your attorney before you signed it?

3  A      Yes, I did, Your Honor.

4  Q      And did she explain all the terms to you?

5  A      She did, Your Honor.

6  Q      And was she able to answer whatever questions you may have

7  had?

8  A      Yes, Your Honor.

9  Q      Are you comfortable that you understand the terms of the

10 plea agreement?

11 A      Yes, Your Honor.

12 Q      And you are agreeing to it, is that correct?

13 A      Yes, Your Honor.

14 Q      Okay.  A little while ago during Mr. Williams' allocution,

15 the attorney for the Government outlined the terms of the plea

16 agreement, and again they're identical between you and your co-

17 defendant.  You heard that summary?

18 A      Yes, I did, Your Honor.

19 Q      And did you understand it?

20 A      Yes, Your Honor.

21 Q      Do you have any questions for me about it?

22 A      No.

23 Q      Okay.  We also talked about the elements of a crime, which

24 are the elements that the Government must prove to establish

25 guilt at trial. Are you aware of the elements of the crime with

1    which you are charged and which you intend to plead guilty?

2    A    Yes, Your Honor.

3    Q    Okay, and again you and Mr. Williams are pleading guilty

4    to the same crime.  Did you hear the Government attorney's

5    recitation of the elements of the crime conspiracy to commit

6    wire fraud?

7    A    Yes, Your Honor.

8    Q    And did you understand those elements?

9    A    Yes, Your Honor.

10   Q    Okay.  Would you like them repeated now?

11   A    No.

12   Q    Okay.  Let's go back to the plea agreement as well, would

13   you like the terms of the plea agreement repeated by the

14   attorney for the Government either?

15   A    I'm okay, Your Honor.

16   Q    Okay, he'll do it.

17   A    No, I'm okay.

18   Q    Okay.  Let's continue.  I think may be repeating myself,

19   but better too much than too little.  You discussed with your

20   attorney the one count to the information to which you intend

21   to plead guilty?

22   A    Yes, Your Honor.

23   Q    And you understand the nature of the charges, correct?

24   a    Yes, Your Honor.

25   Q    Okay, as part of the recitation of the potential

1  penalties you face, the Government mentioned something called

2  supervised release.  Which is a period of time after

3  incarceration, if there is incarceration, during which your

4  conduct would be supervised.  You'd be subject to a variety of

5  restrictions much like with the bond that I signed earlier that

6  will let you be released, although there will be different

7  restrictions.  The point I want to make is that if you violate

8  any of those restrictions you could be subject to further

9  incarceration for a period of up to three years without credit

10 for prior time served, do you understand?

11 A    Yes, Your Honor.

12 Q    Okay. Have you discussed the sentencing guidelines with

13 your attorney?

14 A    Yes, Your Honor.

15 Q    Okay.  Do you understand the sentencing guidelines are not

16 mandatory, but that in sentencing the Court is required to

17 consider the applicable guideline range, along with a certain

18 number of statutory factors. And the Court will consider the

19 nature and circumstances of the offense, and your criminal

20 history of any, and other characteristics.  Do you understand?

21 A    Yes, Your Honor.

22 Q    What that means is the only guarantee you have with regard

23 to sentence is the statutory maximum discussed earlier, which

24 is 30 years, do you understand?

25 A    Yes, Your Honor.

1  Q    Okay, in formulating the sentence, as I mentioned before,

2  the District Court will have to consider certain factors. These

3  include seriousness of the offense, just punishment and

4  protection of the public from additional criminal conduct by

5  you and others.  Do you understand?

6  A    Yes, Your Honor.

7  Q    Do you realize if the sentence is more severe than you

8  expect you'll still be bound by your guilty plea and you will

9  not be permitted to withdraw it, although you may be able to

10 attack the conviction or sentence if you're sentenced to a

11 period of incarceration greater than 46 months.  Do you

12 understand?

13 A    Yes, Your Honor.

14 Q    Okay.  Do you have any questions you'd like to ask me

15 about the charges or your rights or anything else relating to

16 this matter?

17 A    No, Your Honor.

18 Q    Are you prepared to plea at this time?

19 A    I am, Your Honor.

20      THE COURT:  Ms. Charrington, do you know any legal

21 reason why the defendant should not plead guilty?

22      MS. CHARRINGTON:  No, Your Honor.

23 Q    All right, Mr. Cornwall, are you satisfied with your legal

24 representation up until this point?

25 A    Yes, Your Honor.

1  Q    Do you believe your lawyer did a good job?

2  A    Yes, I do.

3  Q    What is your plea to the one count in the information for

4  conspiracy to commit wire fraud?

5  A    Guilty, Your Honor.

6  Q    Are you making this plea of guilty voluntarily and of your

7  own free will?

8  A    Free will, Your Honor.

9  Q    Has anyone threatened you or coerced you in any way in for

10 you to plead guilty?

11 A    No, Your Honor.

12 Q    Other than you agreement with the Government, meaning the

13 plea agreement that you signed and we've discussed earlier in

14 these proceedings, has anyone made any promises to you to get

15 you to plead guilty?

16 A    No, Your Honor.

17 Q    Has anyone made any promise to you as to what your

18 sentence will be?

19 A    No, Your Honor.

20 Q    All right, I'm now going to ask you to describe for me in

21 your own words what you did in connection with the charge to

22 which you're pleading guilty.

23 A    Between approximately May 1st 2020 and July 31st 2020 in

24 West Babylon, New York and other places, I agreed with other

25 individuals to engage in a scheme to defraud the small business

1  administration and financial institutions, of paycheck

2  protection program and economic injury disaster loan proceeds.

3  As a part of the scheme I caused the submission of PPP and EIDL

4  loan applications over the internet that contained false

5  information about companies that I operated, including the

6  identity of the individuals applying for the loan, the

7  companies, number of employees, revenue, payroll costs, and the

8  intended use of the loan proceeds.  Based upon this false

9  information, the SBA and Celtic Bank distributed PPP and EIDL

10  loan proceeds to bank accounts that I controlled.

11         THE COURT:  Okay, Mr. King, anything else with

12  respect to the allocution?

13         MR. KING:  No, it's sufficient, thank you, Your

14  Honor.

15         THE COURT:  All right, I'm now going to ask the

16  attorney for the Government to outline the proof that would

17  have been submitted had this matter gone to trial.

18         MR. KING:  Your Honor, as similar to the co-

19  defendant, we would have proved that the EIDL loan applications

20  and PPP loan applications that the defendant caused the

21  submission of over the internet were fraudulent based upon

22  financial records that were subpoenaed during the course of the

23  case, bank records related to the companies that the defendant

24  operated, along with the results of an email search warrant

25  which showed an intent to defraud.

1          In addition to that we would have had testimony from

2     witnesses and various other documents that we would have

3     submitted to prove the fraud outlined in the information.

4          THE COURT:  All right.  Ms. Charrington, is there

5     anything else you want to put on the record or any questions?

6          MS. CHARRINGTON:  No, Your Honor.

7          THE COURT:  Okay.  Mr. Williams, given everything

8     that's occurred today, and it's been a long afternoon, are you

9     still comfortable with Ms. Charrington representing both you

10    and your co-defendant?

11         DEFENDANT WILLIAMS:  Yes, Your Honor.

12         THE COURT:  Same question to you, Mr. Cornwall, given

13    everything that's happened, are you still comfortable with Mr.

14    Charrington representing both you and Mr. Williams?

15         DEFENDANT CORNWALL: Yes, Your Honor.

16         THE COURT:  Okay.  Based on the information given to

17    me, I find that both of the defendants are acting voluntarily,

18    that they both fully understand their rights and the

19    consequences of the plea, of both of their pleas I should say,

20    each of their pleas, excuse me.  And that there's a factual

21    basis for each plea.  I'm therefore recommending to Judge

22    Azrack that she accept of guilty to the one count in the

23    information for conspiracy to commit wire fraud from both

24    defendants.

25         I will also add that there's been nothing indicated

1  to me over the course of these proceedings, which have been

2  soup to nuts, that would indicate there is any conflict of

3  interest that would otherwise invalidate anything that's

4  happened today.

5        Is there anything else for the  Government?

6        MR. KING:  There is not, thank you, Your Honor.

7        THE COURT:  Okay.  For the defendants?

8        MS. CHARRINGTON:  No, Your Honor.

9        THE COURT:  Okay, you're both reminded I guess

10  there's a sentencing date of December 7th at 10 a.m. before

11  Judge Azrack. Thank you all, we are concluded.

12        MS. CHARRINGTON:  Thank you, Your Honor.

13                          * * * *

14              **C E R T I F I C A T I O N**

15        I, **PATRICIA POOLE**, court approved transcriber,

16  certify that the foregoing is a correct transcript from the

17  official electronic sound recording of the proceedings in the

18  above-entitled matter.

19

20  /S/ PATRICIA POOLE

21  TRACY GRIBBEN TRANSCRIPTION, LLC      DATE: June 28, 2023

22

23

24

25